UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TRIBOROUGH SCAFFOLDING AND HOISTING
SERVICES, INC., SHANRI-LA ASTORIA, INC.,
and NEW YORK FAST GENERAL
CONTRACTING CORP.,

                            Plaintiffs,

              -against-

SOUTHWEST MARINE & GENERAL
INSURANCE COMPANY and ENDURANCE
AMERICAN SPECIALTY INSURANCE
COMPANY,

                            Defendants.
----------------------------------------------------------------x

                                        23-cv-7324 (PKC)

                                        OPINION AND ORDER

CASTEL, U.S.D.J.

              This action has its genesis in a construction accident in which an employee of a

non-party fell from a scaffold and was injured.  The injured worker commenced an action in state

court against Triborough Scaffolding and Hoisting Services, Inc. ("Triborough"), Shangri-La

Astoria, Inc. ("Shangri-La"), and the New York Fast General Contracting Corp. ("NY Fast")

each of whom asserted that they were covered as "additional insureds" under policies issued by

Southwest Marine & General Insurance Company ("Southwest") and excess insurer Endurance

American Specialty Insurance Company ("Endurance").  The two insurers declined to defend

and indemnify.  Triborough, Shangri-La and NY Fast commenced this action against Southwest

and Endurance.

              Defendant Southwest, joined by Endurance, seek summary judgment in their

favor dismissing the claims of plaintiffs Triborough, Shangri-La and NY Fast on grounds that

they are not "additional insureds" under the policy issued to the named insured, non-party RHG

Manpower, Inc. ("RHG").  (ECF 38, 42, 52.)  Plaintiffs have filed a cross-motion for summary

judgment seeking a declaration that defendants each owe them a duty to defend and indemnify in the underlying state court action.  (ECF 43.)

    The Court concludes that the policies RHG obtained from Southwest and Endurance contain broad language providing coverage to entities for whom RHG is obligated by contract to provide "additional insured" coverage.  Triborough has come forward with an agreement with RHG in 2017 that appears to require RHG to obtain such coverage for Triborough and others who Triborough is obligated to indemnify but whether the scaffolding work at issue is covered by this agreement is disputed.  In this action, Triborough characterizes the 2017 agreement as a master agreement covering all projects, including the project giving rise to the scaffolding injury claim.  Southwest and Endurance assert that the agreement is silent as to the covered work and Triborough and RHG's witnesses have given testimony that contradicts the claim that the work on the project where the injury occurred is covered by the agreement.   The Court concludes that there is a material issue of fact that is genuinely disputed and must be resolved by the fact finder.

BACKGROUND

For each side's motion for summary judgment, the Court construes the facts in a light most favorable to the non-movant.[1]

Southwest issued to non-party RHG a Commercial General Insurance Policy, numbered GL201700010874, for a policy period from December 14, 2017, to December 14, 2018 (the "Policy").  (Def. 56.1 (ECF 38) ¶ 7; Pl. 56.1 Resp. (ECF 44) ¶ 7.)  RHG was the named insured on the Policy.  (Id.)  The Policy contains two endorsements that set forth the requirements for an entity to qualify as an additional insured.  (Def. 56.1 ¶ 9; Pl. 56.1 Resp. ¶ 9.)  Endurance has provided excess liability coverage which "follows form" of the underlying policy.  (ECF 46-7 at 44.)[2]

The first endorsement to the Policy is entitled "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" and provides "Commercial General Liability Coverage" for additional insureds.  (Def. 56.1 ¶ 10; Pl. 56.1 Resp. ¶ 10.)  The first endorsement provides that general liability coverage extends to "[a]ll entities required by written contract to be included as additional insureds but only with respect to operations performed by the Named Insured or on their behalf."  (Id.; Lamberti Decl. Ex. B (ECF 39-2).)

The second endorsement, entitled, "Deluxe Commercial Liability Broadening Endorsement" provides, "Legal Liability Coverage" for additional insureds.  (Def. 56.1 ¶ 11; Pl. 56.1 Resp. ¶ 11.)  The second endorsement extends legal liability coverage to additional insureds

---

[1] Citations to the parties' Rule 56.1 statements are intended to reflect the evidence cited in those statements.

[2] In the summary judgment submissions, defendant Endurance has not disputed that all additional insureds under the Southwest Policy would be additional insureds under RHG's insurance policy with Endurance.  (Pl. 56.1 (ECF 44) ¶¶ 3-4; Def. 56.1 Resp. (ECF 51) ¶¶ 3-4).  Endurance has waived any argument to the contrary.  See, e.g., Palmieri v. Lynch, 392 F.3d 73, 87 (2d Cir. 2004) (noting that a party who does not "raise [an] argument in his opposition to summary judgment" waives that argument); Ohr Somayach/Joseph Tanenbaum Education Center v. Farleigh International Limited, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) (Halpern, J.) ("Arguments not raised in a party's brief are deemed waived.").

when "[the named insured] and such person or organization have agreed in a written 'insured contract' that such person or organization be added as an additional insured under this policy." (Def. 56.1 ¶ 11; Pl. 56.1 Resp. ¶ 11; Lamberti Decl. Ex. C (ECF 39-3).)  The endorsement limits coverage also to the named insured's "ongoing operations performed for that insured . . . ." (Id.)

In December 2017, RHG and Triborough executed a document entitled "Subcontract Agreement Rider (Contractor/Subcontractor)" (the "2017 RHG-Triborough Agreement" or the "Agreement").[3]  (Def. 56.1 ¶¶ 12-13; Pl. 56.1 Resp. ¶¶ 12-13; Stern Decl. Ex. E (ECF 40-5).)  Plaintiffs allege that the 2017 RHG-Triborough Agreement was the first of yearly agreements entered into between Triborough and RHG.  (Pl. 56.1 ¶ 25; Def. 56.1 Resp. (ECF 51) ¶ 25.)  The preamble of the 2017 RHG-Triborough Agreement states that "[t]he terms and conditions of this Rider shall supersede and govern any inconsistent term found in other parts of the written agreement and other riders between the parties."[4]  (Def. 56.1 ¶ 18; Pl. 56.1 Resp. ¶ 18; Stern Decl. Ex. E.)  The Agreement requires that RHG, as subcontractor, to insure and indemnify Triborough, as contractor, as well as any parties that Triborough is required to indemnify.  (Def. 56.1 ¶ 19; Pl. 56.1 Resp. ¶ 19.)  The second paragraph of the 2017 RHG-Triborough Agreement, titled, "Insurance," states that RHG "shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required to indemnify and hold harmless, the Owner . . . for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement . . . ."  (Id.; Stern Decl. Ex. E.)

---

[3] On December 15, 2017, the President of RHG, Gil Menashe, signed the Agreement.  (Def. 56.1 ¶ 13; Pl. 56.1 Resp. ¶ 13.)  On December 16, 2017, the Vice President of Triborough, Jared Bohrer, also signed the Agreement.  (Def. 56.1 ¶ 12; Pl. 56.1 Resp. ¶ 12.)
[4] Confusingly, the Agreement is described as a "Rider," i.e., in addition to some other document, but the document is not identified.

Plaintiff Shangri-La owned a property located at 37-21 32nd Street, Long Island City, New York, and hired NY Fast to act as the general contractor for a construction project on the property ("the Project"). (Def. 56.1 ¶ 4; Pl. 56.1 Resp. ¶ 4.) In May 2018, NY Fast contracted with Triborough for Triborough to provide scaffolding on the Project. (Def. 56.1 ¶¶ 4, 26; Pl. 56.1 Resp. ¶¶ 4, 26.) Triborough, in turn, subcontracted the scaffolding work to RHG. (Def. 56.1 ¶ 5; Pl. 56.1 Resp. ¶ 5.)

On October 3, 2018, non-party William Ramon Paulino, an employee of RHG, allegedly fell from a scaffold while working on the Project. (Def. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2.) Paulino commenced an action in New York state court to recover damages against Triborough, Shangri-La, and NY Fast. William Ramon Paulino v. Shangri-La Astoria, Inc. et al., (Sup. Ct., N.Y. County, Index No. 159439/2018) (the "underlying action"). (Def. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1.) In the underlying action, NY Fast, Triborough, and Shangri-La filed third-party complaints against RHG alleging that Paulino was injured as a result of RHG's negligence. (Pl. 56.1 ¶¶ 8-13; Def. 56.1 Resp. ¶¶ 8-13.)

In an August 2, 2019 letter to Southwest and RHG, NY Fast and Shangri-La claimed that they were additional insureds under the policy issued to RHG. (Pl. 56.1 ¶ 34; Def. 56.1 Resp. ¶ 34.) On October 25, 2019, Triborough also claimed to be an additional insured under the Southwest and Endurance policies issued to RHG. (Pl. 56.1 ¶ 35; Def. 56.1 Resp. ¶ 35.) Southwest declined coverage and Endurance did not respond to plaintiffs. (Compl't (ECF 1-1) ¶¶ 27, 29.)

- 5 -

SUMMARY JUDGMENT STANDARD

Under Rule 56(a), Fed. R. Civ. P., summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party seeking summary judgment bears the burden of demonstrating there is no genuine dispute of material fact.  Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).  A fact is "material" when it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  There is a genuine issue of fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In reviewing a summary judgment motion, a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor."  Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ."  Anderson, 477 U.S. at 247-48.  The nonmoving parties "must do more than simply show there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation."  Jeffreys, 426 F.3d at 554 (internal citations and quotations omitted).

DISCUSSION

In plaintiffs' motion for summary judgment, they seek a declaration that they qualify as additional insureds under the Policy and that, by extension, defendants owe them a duty to defend and indemnify in connection with the underlying lawsuit. In defendants' cross-motion for summary judgment, defendants oppose plaintiffs' motion and urge the Court dismiss plaintiffs' Complaint with prejudice.

Under New York law, "the duty of an insurer to defend its insured its 'exceedingly broad' . . . ."[5] High Point Design, LLC v. L.M. Ins. Corp., 911 F.3d 89, 94 (2d Cir. 2018) (citing Continental Casualty Co. v. Rapid-American Corp., 80 N.Y.2d 640, 648 (1993)). "[A]n insurer has a duty to defend when there is a possibility that it 'might eventually be . . . obligated to indemnify the insured under any provision of the insurance policy.'" North River Ins. Co. v. Leifer, 22-1009, 2023 WL 2978970, at *1 (2d Cir. Apr. 18, 2023) (quoting CGS Industries, Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 82 (2d Cir. 2013)). The duty to defend "applies equally to additional insureds and named insureds." Regal Construction Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA, 15 N.Y.3d 34, 37 (2010.)

"[A]n insurer's duty to defend is . . . distinct from [its] duty to indemnify." Euchner-USA, Inc. v. Hartford Casualty Ins. Co., 754 F.3d 136, 140 (2d Cir. 2014). "An insurance company has a duty to indemnify 'when the underlying occurrence falls within the scope of coverage afforded by the particular insurance policy at issue.'" Liberty Ins. Corp. v. New York Marine and General Ins. Co., 22-cv-1081 (DLC), 2023 WL 2597053, at *7 (S.D.N.Y. Mar. 22, 2023), aff'd in part, rev'd in part, Liberty Ins. Corp. v. Hudson Excess Ins. Corp., 147

---

[5] The parties do not dispute that New York law governs. See Bennett v. Sterling Planet, Inc. 546 F. App'x 30, 33 (2d Cir. 2013) (summary order) ("In a diversity case, where the parties have agreed to the application of the forum law– as evidenced by reliance on that law in the parties' briefing, as in this case–their agreement ends the choice-of-law inquiry.").

F.4th 249 (2d Cir. 2025) (quoting <u>One Reason Road, LLC v. Seneca Ins. Co., Inc.</u>, 83 N.Y.S.3d 235, 239 (2d Dep't 2018)).  "With respect to the duty to indemnify, the court must find a practical likelihood that the third party [plaintiff]" will prevail in litigation against the insured. <u>Admiral Ins. Co. v. Niagara Transformer Corp.</u>, 57 F. 4th 85, 93 (2d Cir. 2023).

"'[W]hen determining whether a third party is an additional insured under an insurance policy, a court must ascertain the intention of the parties to the policy, as determined from *within the four corners of the policy itself*.'"  <u>Cincinnati Ins. Co. v. Harleysville Ins. Co.</u>, 709 F. App'x 71, 74 (2d Cir. 2017) (summary order) (quoting <u>77 Water Street, Inc. v. JTC Painting Decorating Corp.</u>, 50 N.Y.S. 3d 471, 475 (2d Dep't 2017)).  Under New York law, an insurance agreement is "subject to principles of contract interpretation."  <u>Starr Indemnity & Liability Co. v. Brightstar Corp.</u>, 388 F. Supp. 3d 304, 325 (S.D.N.Y. 2019) (Gorenstein, J.), <u>aff'd</u>, 828 F. App'x 84 (2d Cir. 2020).  The "well-established principles governing the interpretation of insurance contracts . . . provide that the unambiguous provisions of an insurance policy, as with any written contract, must be afforded their plain and ordinary meaning, and that the interpretation of such provisions is a question of law for the court."  <u>Broad Street, LLC v. Gulf Ins. Co.</u>, 37 A.D.3d 126, 130-131 (1st Dep't 2006).

Whether a contract is ambiguous "is a question of law to be resolved by the courts."  <u>Stoncor Group, Inc. v. Peerless Ins. Co.</u>, 16-cv-4574 (LAK), 2022 WL 3701640, at *4 (S.D.N.Y. 2022).  To determine whether a contract is ambiguous, the court must determine the meaning "'from within the four corners of the instrument,' irrespective of any extrinsic facts."  <u>U.S. Specialty Ins. Co. v. Wesco Ins. Co.</u>, 529 F. Supp. 3d 251, 257 (S.D.N.Y. 2021) (Vyskocil, J.) (quoting <u>British International Ins. Co. Ltd. v. Seguros La Republica, S.A.</u>, 342 F.3d 78, 82 (2d Cir. 2003)).  "A contract is unambiguous if the language it uses has 'a definite and precise

meaning, unattended by danger of misconception in the purpose of the agreement itself, and concerning which there is no reasonable basis for difference of opinion.'" <u>Greenfield v. Philles Records, Inc.</u>, 98 N.Y.2d 562, 568 (2002) (quoting <u>Breed v. Ins. Co. of North America</u>, 46 N.Y.2d 351, 355 (1978)).  Evidence outside of the contract may only be properly considered "if a court finds ambiguity in the contract."  <u>Lebedev v. Blavatnik</u>, 193 A.D.3d 175, 185 (1st Dep't 2021).

THE POLICY

When considering a dispute over insurance coverage, the court must first look to the language of the policy.  <u>Gilbane Building Co./TDX Construction Corp. v. St. Paul Fire and Marine Ins. Co.</u>, 31 N.Y.3d 131, 135 (2018).  The Policy contains two "additional insured" endorsements that layout the requirements for an entity to be covered as an additional insured. The first endorsement provides general liability coverage to "all entities required by written contract" to be added as additional insureds.  (Lamberti Decl. Ex. B.)  The endorsement, under "Name of Additional Person(s) or Organization(s)," states in full:

> All entities required by written contract to be included as additional insureds but only with respect to operations performed by the Named Insured or on their behalf.

(<u>Id.</u>)

Under the language of the first endorsement, defendants must provide general liability coverage to "all entities required by written contract."  (Lamberti Decl. Ex. B.)  It does not require privity of contract, but merely that the named insured be required by written contract to add an entity as an additional insured.[6]  <u>See</u> <u>Netherlands Ins. Co. v. Endurance American</u>

---

[6] Defendants do not argue in their memoranda that the Policy requires privity of contract between RHG and each plaintiff.  (ECF 41 & 50); <u>see</u>, <u>e.g.</u>, <u>Palmieri</u>, 392 F.3d at 87; <u>Farleigh International</u>, 483 F. Supp. 3d at 206 n.6 (S.D.N.Y. 2020).

Specialty Ins. Co., 157 A.D.3d 468, 468-69 (1st Dep't 2018); see also Vargas v. City of New York, 158 A.D.3d 523, 524-25 (1st Dep't 2018) (concluding that the insurance company was obligated to defend additional insureds "required by written contract" even when a policy contained multiple endorsements with contradictory additional insured requirements); AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc., 102 A.D. 3d 425, 469 (1st Dep't 2013) ("[P]olicies containing broader language have been found to allow for an agreement naming an additional insured without an express contract between the parties.").

The second endorsement is narrower and provides legal liability coverage to additional insureds. The legal liability coverage is limited to entities that the named insured has agreed to add as an additional insured under the policy "in a written 'insured contract.'" (Lamberti Decl. Ex. C at 1 ¶ 1(e)(1).) The endorsement also limits coverage to the named insured's "ongoing operations performed for" the additional insured. (Id. ¶ 1(e)(4)(a).)

Generally, the language of the second endorsement, that "you and such . . . organization have agreed in a written [contract] that such person or organization be added as an additional insured" has been held to require privity of contract with the named insured for an entity to qualify as an additional insured. AB Green, 102 A.D. 3d at 426.

The Court concludes that the first endorsement to the Policy potentially provides coverage to Triborough, Shangri-La, and NY Fast, if RHG obligated itself to secure such coverage even if it failed to have them listed in its policy with Southwest and Endurance as "additional insureds." The Court need not further address the second endorsement.

A. <u>The 2017 Triborough-RHG Agreement is Ambiguous.</u>

The parties dispute whether the 2017 Triborough-RHG Agreement between plaintiff Triborough and the named insured, RHG, is a valid contract that applied to RHG's work on the Project where the underlying incident occurred.  Defendants first assert that the Agreement is not a valid agreement because there is no evidence of consideration for the obligations imposed in the Agreement.  In order for an agreement to be enforceable, there must be "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." <u>Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade</u>, 98 A.D.3d 403, 404 (1st Dep't 2012).  Consideration consists of a "either a benefit to the promisor or a detriment to the promisee." <u>Weiner v. McGraw-Hill, Inc.</u>, 57 N.Y.2d 458, 464 (1982) (citation omitted).  '[I]t is enough that something is promised, done, forborne or suffered by the party to whom the promise is made as consideration for the promise made to him.'" <u>Id.</u> (quoting <u>Hamer v. Sidway</u>, 124 N.Y. 538, 545 (1891)).

The only mention of consideration in the 2017 Triborough-RHG Agreement is found in the first paragraph that states: "In consideration of the Contract Agreement, and to the fullest extent permitted by law, the Subcontractor shall defend and shall indemnify . . . the Contractor . . . ."  (Stern Decl. Ex. E ¶ 1.)  Courts may consider extrinsic evidence with regard to the issue of consideration "as a necessary element of contract formation." <u>Lebedev</u>, 193 A.D. 3d at 185 (collecting cases).  The summary judgment record shows that Triborough would not have hired RHG for work, in exchange for money, without entering into the Agreement.  (Bohrer Dep. at Tr. 46-7 (ECF 46-9); Menashe Dep. at Tr. 34 (ECF 46-10); Bohrer Decl. ¶ 4 (ECF 48).)  Although, as the Court will discuss, there are questions as to whether the Agreement was in

effect at the time of the underlying incident, the Court concludes that there was valid consideration.

Defendants assert that the Agreement was not in effect at the time of the underlying incident and, therefore, does not "expressly and specifically" require that plaintiffs be covered as additional insureds under the Policy. "'A provision in a construction contract cannot be interpreted as requiring the procurement of additional insured coverage unless such a requirement is expressly and specifically stated.'" Meadowbrook Pointe Development Corp. v. F&G Concrete & Brick Industry, Inc., 214 A.D.3d 965, 968-69 (2d Dep't 2023) (citing Crutch v. 421 Kent Development, LLC, 192 A.D.3d 982, 984 (2021)).  Plaintiffs assert that the Agreement at issue was a general "Master Agreement" that applied to all work completed by RHG on behalf of Triborough throughout 2018.

The 2017 Triborough-RHG Agreement consisted of two pages.  (Stern Decl. at Ex. E.)  The Agreement has a section that addresses indemnity obligations, which provides:

> In consideration of the Contract Agreement, and to the fullest extend permitted by law, the Subcontractor shall defend and shall indemnify, and hold harmless, at Subcontractor's sole expense, the Contractor, all entities the Contractor is required [to] indemnify and hold harmless, the Owner of the property, and the officers, directors, agents, employees, successors and assigns of each of them from and against all liability or claimed liability for bodily injury or death to any person(s) . . . arising out of or resulting from the Work covered by this Contract Agreement to the extent such work was performed by or contracted through the Subcontractor or by anyone for whose acts the Subcontractor may be held liable . . . .

(Id. ¶ 1.)

The Agreement also required RHG to obtain insurance to protect Triborough.  In the second paragraph, entitled "Insurance," the Agreement states in relevant part:

> The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required [to] indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by the Subcontractor, or by anyone for whose acts Subcontractor may be liable.

(Id. ¶ 2.)  The Agreement does not define the capitalized terms, "Owner," "Work," or "Contract Agreement."  (Id.)  It does not reference a specific project, set forth a scope of work, describe any work, nor identify a start and end date for any covered work.  (Id.)  Under "List of Indemnified Parties and Additional Insured," the Agreement names Triborough as an additional insured, but does not name plaintiffs Shangri-La nor NY Fast.  (Id. at 2.)

In order for plaintiffs to qualify as additional insureds, the Agreement does not need to detail the specifics of a particular job if it is clear that the parties intended for the Agreement to apply to all jobs for which Triborough hired RHG as a subcontractor, including the Project.  See Rodrigues v. N & S Building Contractors, Inc., 5 N.Y.3d 427, 432 (2005).  Plaintiffs argue that the facts mirror Liberty Ins. Corp., where the parties used the same language as the Agreement in their indemnity and insurance agreement and contained no written description of the work the named insured was hired to perform.  2023 WL 2597053, at *3.  However, in Liberty, the parties did not dispute that the agreement applied to the project where the underlying incident occurred.  Id. at *11 ("It is undisputed that [the written agreement] applied to [the named insured's] work on the Project.").  Here, there is no such agreement between the parties.

The Court concludes that, when read in context with the entirety of the Agreement, it expressly and specifically requires additional insurance coverage for the "Contractor," defined in the Agreement as Triborough, and all entities Triborough is required to

indemnify and defend.  But the Court also concludes that RHG's insurance requirements are expressly limited by the Agreement to the "Work under this Contract Agreement."  Plaintiffs argue that "under this Contract Agreement" merely refers to the Agreement itself, which it alleges was a prerequisite for all work RHG was hired to perform for Triborough.  Plaintiffs' interpretation goes beyond the four corners of the Agreement.  See Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011) ("Ambiguity is determined by looking within the four corners of the document, not to outside sources.").  In the Agreement, "Work under this Contract Agreement" is left undefined.  The Agreement itself does not state that it is a "Master Agreement" and does not provide details such as locations that the work would be performed, description of the type of work covered by the agreement, or a term of application. The Court concludes that Agreement is ambiguous as to whether the "Work under this Contract Agreement" refers to a particular project or proposal between the signatories or if the Agreement applied to multiple projects.  Compagnie Financiere de CIC et de L'Union Europeene v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 157-58 (2d Cir. 2000) ("The question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court.").

B. There is a Question of Fact Whether the Agreement Covered
   Work at the Time of the Underlying Incident.

When a contract is "'facially ambiguous, the District Court may consider any evidence that is probative of the parties' intent, including parol evidence.'" Travelers Property Casualty Co. of America v. Wesco Ins. Co., 585 F. Supp. 3d 463, 472 (S.D.N.Y. 2022) (Caproni, J.) (quoting International Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 87 (2d Cir. 2002)). Summary judgment is appropriate when "a party's extrinsic evidence demonstrates 'not only that its interpretation is reasonable but that it is the only fair interpretation.'" Demetrio v. Stewart Title Ins. Co., 124 A.D.3d 824, 826 (2d Dep't 2015) (quoting City of New York v. Evanston Ins. Co., 39 A.D.3d 153, 156 (2d Dep't 2007)). However, "[w]here there is ambiguity and the 'determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such a determination is to be made by the jury.'" Id. (quoting Hartford Accident & Indemnity Co. v. Wesolowski, 33 N.Y.2d 169, 172 (1973)).

The summary judgment record contains conflicting testimony as to whether the Agreement was intended to apply for the entirety of the 2018 calendar year. Gil Menashe, former President of RHG, testified at deposition as a third-party witness that the Agreement was a general agreement that applied to all projects RHG worked on for Triborough for a calendar year. (Menashe Dep. at Tr. 21, 25 (ECF 46-11).) Menashe said that the Agreement was only meant to apply in 2017. (Id. at Tr. 20-21 ("In 2018 there's supposed to be a new agreement.[7]

---

[7] There is no evidence in the summary judgment record that any agreement between Triborough and RHG was executed in 2018. In May 2020, plaintiff Triborough emailed RHG a new document entitled "Contractor to Sub-Contractor Version," which had been backdated to January 1, 2018. (Stern Decl. Ex. K.) Allegedly, this was due a flood at Triborough's office. (Hallem Dep. at Tr. 55-6 (ECF 46-10); Bohrer Dep. at Tr. 118-19 (ECF 46-9).) Plaintiffs and defendants now agree that the backdated agreement does not concern the Project. (ECF 41 at 11; ECF 45 at 10.)

2019, a new agreement.  It's supposed to be.  It doesn't have to be, but it's customary, and usually you don't even sign an agreement."))  Menashe testified that, typically, in order to retain RHG for a project, an employee of Triborough would call the day before workers were needed and provide the project's details.  (Id. at Tr. 15.)

Unlike Menashe, Vice President of Triborough, Jared Bohrer, testified at deposition that there were no oral agreements and "everything is in writing" between Triborough and RHG.  (Bohrer Dep. at Tr. 70 (ECF 46-9).)  Bohrer said for each project Triborough subcontracted to RHG that there "should" be a separate, site-specific contract with insurance obligations.  (Id. at Tr. 105-07.)  Isabelle Hallem, Triborough's bookkeeper, confirmed that Triborough and RHG entered into project-specific agreements for each project.  (Hallem Dep. at Tr. 33 (ECF 46-10).)

Bohrer and Hallem testimony was materially inconsistent.  Hallem later testified that Triborough "never sign[ed] anything for a specific project" and that the Agreement applied to all projects.  (Hallem Dep. at Tr. 47-48.)  In deposition testimony in the underlying action, Bohrer testified that the Agreement applied to all projects for one year and was in effect on the date of Paulino's injury.  (Ronan Decl., Ex. M. at Tr. 41-43 (ECF 46).)  He also said that Triborough would contact RHG through phone calls or texts for work on specific projects.  (Id. at Tr. 87, 123-24, 140.)  In his most recent testimony in this action, Bohrer said that "Work," which was left undefined in the Agreement's text, referred to the Project.  (Bohrer Dep. at Tr. 67-68.)  However, Bohrer acknowledged that he had previously testified that Triborough was retained for the Project in May 2018 and that the Agreement was executed months before the Project existed in December 2017.  (Bohrer Dep. at Tr. 101-03.)

After the close of fact discovery, plaintiffs submitted declarations from Bohrer and Hallem.  (ECF 48 & 49.)  Bohrer's and Hallem's declarations reiterate aspects of their testimony where they had stated that Triborough and RHG did not enter into separate agreements for individual projects and that the Agreement was in effect at the time of the underlying incident.  (Bohrer Decl. ¶¶ 4-5 (ECF 48); Hallem Decl. ¶ 7 (ECF 49).)  Defendants argue that the Court should not consider Bohrer's and Hallem's declarations under the "sham issue of fact" doctrine, which prohibits parties "from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony."  In re Fosamax Products Liability Litigation, 707 F.3d 189, 193 (2d Cir. 2013).  Plaintiffs assert that Hallem's declaration is not contradictory and that Bohrer's declaration merely reiterates his deposition testimony from the underlying action.  See In re World Trade Center Lower Manhattan Disaster Site Litigation, 758 F.3d 202, 213 (2d Cir. 2014) (concluding that "[t]he principle does not apply . . . if the statements 'are not actually contradictory' or 'the later sworn assertion addresses an issue that . . . was not thoroughly or clearly explored.'") (citation omitted).  The declarations are not "actually contradictory" with parts of Bohrer's and Hallem's prior testimony.

Plaintiffs argue to the extent Bohrer's deposition testimony in the underlying action contradicts deposition testimony in this action, the Court should credit his testimony in the underlying action.  "The role of the Court in deciding a summary judgment motion is not to assess the credibility of declarants' statements under penalty of perjury."  Red Fort Capital, Inc. v. Guardhouse Productions LLC, 19-cv-686 (PKC) (RWL), 2022 WL 118637, at *6 (S.D.N.Y. Jan. 11, 2022) (PKC); see also Jin Dong Wang v. LW Restaurant, Inc., 81 F. Supp. 3d 241, 260 (E.D.N.Y. 2015) ("It is not the Court's province 'to engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment.") (citing Rivera v. Rochester Genesee

Regional Transp. Authority, 743 F.3d at 11, 20 (2d Cir. 2014)).  Ordinarily, "the assessment of a witness's credibility is a function reserved for the jury."  Moll v. Telesector Resources Grp., Inc., 760 F.3d 198, 206 (2d Cir. 2014).  The Court concludes that the extrinsic evidence is not uncontroverted and does not permit the Court to rule as a matter of law Triborough and RHG intended the Agreement to apply for all construction jobs during the 2018 calendar year.  See M&M Realty of New York, LLC v. Burlington Ins. Co., 170 A.D.3d 407, 407-08 (1st Dep't 2019) (concluding that extrinsic evidence "presents an issue of credibility" that did not conclusively demonstrate the parties' intent as to whether a party was to be named as an additional insured).

Defendants also urge that plaintiffs NY Fast's and Shangri-La's claims should be dismissed because they are not specifically named in the Agreement.  The Policy provided insurance coverage to "all entities required by written contract to be included as additional insureds but only with respect to operations performed by the Named Insured or on their behalf." (ECF 39-2.)  Courts have found that this language does not require that the additional insured be specifically named in the contract, but, rather, provides insurance coverage to any entity that RHG was required to name as an additional insured under a written contract.  See Gofranullah v. 630 Realty, LLC, 34602/05, 2007 WL 2304746, at *3 (Sup. Ct., Kings County, Aug. 10, 2007) ("The [policy] contains no language requiring that the additional insured be specifically named in the contract . . . but, rather, it provides insurance coverage to 'any person or organization' whom [the named insured] was required to name as an additional insured . . . .").  The Agreement provides that RHG must procure insurance that protects "the Contractor, all entities the Contractor is required [to] indemnify and hold harmless, the Owner . . . ."  (ECF 40-5.)  Shangri-La owned the property where the underlying incident occurred.  NY Fast and Triborough signed

an agreement that contains the same insurance language as the Agreement.[8]  (ECF 47-3.)  When

the underlying incident occurred, RHG was working at the Project site.  Therefore, the question

of whether NY Fast and Shangri-La are additional insureds turns on whether the Agreement

applied to all projects RHG performed for Triborough in 2018, including the at-issue Project,

which is a question that must be left to the jury.

 CONCLUSION

       For the foregoing reasons, plaintiffs' motion and defendants' motion for summary

judgment are DENIED.  The Clerk is respectfully requested to terminate the related motions.

(ECF 38, 43, & 52.)

       SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
     September 24, 2025

---

[8] The Agreement between Triborough and RHG was executed in December 2017.  (ECF 47-3.)  The language of the Agreement required that Triborough, as the subcontractor "shall procure and shall maintain until final acceptance of the of the Work, such insurance as will protect the Contractor, all entities the Contractor is required to indemnify and hold harmless, the Owner, and their officers . . . ."  (Id. ¶ 2.)