UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TRIBOROUGH SCAFFOLDING AND HOISTING SERVICES, INC., SHANGRI-LA ASTORIA, INC., and NEW YORK FAST GENERAL CONTRACTING CORP.,

Plaintiffs,

23-cv-7324 (PKC)

ORDER ON MOTION TO RECONSIDER

-against-

SOUTHWEST MARINE AND GENERAL INSURANCE COMPANY and ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,

Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.,

Defendant Southwest Marine & General Insurance Company ("Southwest Marine") moves to reconsider the Findings of Fact and Conclusions of Law of October 2, 2026 (the "October 2 Order"). Defendant Endurance American Specialty Insurance Company ("Endurance") joins in the motion and has also filed its own memorandum.

In the October 2 Order, the Court found that an indemnity and insurance agreement entered into between Triborough Scaffolding and Hoisting Services, Inc. ("Triborough") and its scaffolding subcontractor RHG Manpower, Inc. ("RHG") in late December 2017 (the "Agreement") was applicable to work on a project performed by RHG (the "Project") at which an alleged injury occurred that formed the basis for the suit (the "Underlying Action") for which "additional insured" coverage from defendants was sought. The Agreement

did not have a stated term of duration but was executed in mid-December 2017. The injury alleged in the Underlying Action occurred in October 2018.

The Court addresses each of defendants' grounds for reconsideration. It grants the motion as to the duty to indemnify that the parties do not dispute is premature to decide but denies the motion on all other grounds, thus leaving in place the finding and conclusion as to the duty to defend.

DISCUSSION

I. Standard on a Motion to Reconsider

The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Accordingly, a motion for reconsideration "may be granted based upon 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Cunningham v. Cornell Univ., No. 16-cv-6525, 2020 WL 1165778, at *1 (S.D.N.Y. Mar. 11, 2020) (Castel, J.) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). It is not "an opportunity for making new arguments that could have been previously advanced." Associated Press v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (Rakoff, J.).

II. Duty to Indemnify

Count One of the Complaint seeks "a declaration that [plaintiffs] are additional insureds under the Southwest Marine policy and are entitled to a defense and indemnification

thereunder on a primary and non-contributory basis in [the Underlying Action]." (Compl't ¶ 35.) Count Two seeks similar relief against Endurance, the excess insurer. (Id. ¶ 40.)

The October 2 Order holds as follows: "The Court finds in favor of plaintiffs and against Southwest Marine and Endurance on Counts One and Two of plaintiffs' complaint declaring that . . . Southwest Marine must defend and indemnify plaintiffs as additional insureds on a primary and noncontributory basis in connection with Underlying Action . . . ." (October 2 Order at 23 (emphasis added).)

The Court agrees with Southwest Marine and Endurance that, on the facts of this case, the issue of the duty to indemnify is not ripe until the Underlying Action is adjudicated. It is conceivable that the facts as found at trial could trigger an exclusion not otherwise apparent or applicable. The reservation in the Joint Pretrial Order of June 23, 2026 at II(iii) was sufficient to preserve this issue.

The "Conclusion" of the October 2 Order is modified to delete the words "and indemnify" in the first sentence and the entirety of the second sentence that required the submission of a proposed final judgment. Final judgment will await the adjudication of the indemnity claim. Plaintiffs do not oppose the defendants' requested modification.

### III. Under New York Law, the Agreement, Silent as to Duration, Is Properly Construed as Extending for a Reasonable Time that Encompasses the October 2018 Alleged Injury.

Defendants argue that the Court overlooked or misconstrued the testimony of Gil Menashe of RHG in making its Finding of Fact at paragraph forty of the October 2 Order. That paragraph reads as follows:

> Menashe's initial claim that the Triborough-RHG Agreement applied only to the projects begun between the dates of execution, December 15 and 16, 2017, and December 31, 2017 (Menashe

> Decl. ¶ 9) is not credible and was contradicted by his subsequent testimony. (Tr. at 170 (could not say "if I signed for 2017, 2018, and maybe even 2016").)

Defendants argue that Menashe's statement did not undermine his credibility because he was not saying that the Agreement applied only for the closing days of 2017. Instead, he was saying that it extended retroactively to the beginning of 2017 and terminated at year end. Even if accepted, this interpretation of Menashe's testimony does not change any conclusion in this action.

The Court's finding was based on paragraph nine of the Menashe Declaration, which states "[b]ecause this Rider was signed in 2017, it is my understanding that the Rider applied to work performed in 2017." The Court read paragraph nine as implying that the Agreement applied to work from the date of execution, December 15 and 16, 2017, until the end of 2017.

However, the Court's October 2 Order also acknowledged Menashe's testimony that he had a unilateral "custom and practice" that such agreements apply, in his view, to work performed "over the course of a year." (October 2 Order ¶¶ 32-33.) It is, therefore, inaccurate to say that the Court did not take account of Menashe's view that the Agreement applied to the entirety of 2017.

That said, Menashe's testimony that he had a personal custom and practice of intending that a contract signed in one year applied to that entire calendar year and no other amounts to nothing more than his unexpressed, unilateral belief. "The secret intent of the parties is irrelevant to contract interpretation." Tom Doherty Assocs. Inc. v. Saban Ent. Inc., 869 F. Supp. 1130, 1137 (S.D.N.Y. 1994) (McKenna, J.) (citing Porter v. Com. Casualty Ins. Co., 292 N.Y. 176, 183 (1944)), aff'd, 60 F.3d 27 (2d Cir. 1995). "[T]o justify a decision that the parties

to a written contract intended to obligate themselves to something which cannot be found in the terms of the contract itself, the custom must be shown to be reasonable, uniform, well settled, and either known to the parties when the contract is made, or so generally known as to raise a presumption that they had it in mind at the time." Cassin v. Stillman, Delehanty-Ferris Co., 185 A.D. 63, 65 (2d Dep't 1918). Defendants have made no attempt to show that Triborough generally or specifically knew of Menashe's unique "custom." Menashe recalled no conversations with Triborough regarding the scope of the Agreement (Menashe Decl. ¶ 10), and he acknowledged that "[t]he [Agreement] does not have any dates that the [Agreement] is proposed to cover." (Id. ¶ 13.)

Additionally, Menashe's testimony was generally unreliable as to the temporal scope of the agreement. The best indicator of this was his concession on cross-examination that he could not even say whether the Agreement was signed in 2016, 2017, or 2018:

> During the time of the signature there was no date on the contract, so I can't know if I signed for 2017, 2018, and maybe even 2016. When . . . there's a work relationship, you trust the other side that the document is what it's supposed to be.

(Tr. 170; October 2 Order ¶ 32.) There ultimately is no dispute between plaintiffs and defendants that the Agreement was signed on or about December 15 and 16, 2017. (ECF 77 at 5; Joint Pre-Trial Order of June 23, 2026 at II(ii).) But, as noted in the October 2 Order (October 2 Order ¶ 40), Menashe's lack of certainty makes his testimony less credible.

New York case law holds that "[i]n the absence of an express term fixing the duration of a contract, the courts may inquire into the intent of the parties and supply the missing term if a duration may be fairly and reasonably fixed by the surrounding circumstances and the parties' intent." See Haines v. City of New York, 41 N.Y.2d 769, 772 (1977) (citations omitted). And even "where the parties have not clearly expressed the duration of a contract, the courts will

imply that they intended performance to continue for a reasonable time." Id. (citations omitted). There was no fixed term in the Agreement, but it is reasonable to infer that it was intended to extend beyond the two-week period from signing to the end of 2017. As Jared Bohrer of Triborough put it:

> "Triborough did not have RHG sign an annual agreement at the beginning of 2018 because we had just signed an agreement and it was understood by Triborough (me) and RHG (Mr. Menashe) that the agreement signed in December 2017 applied for all of 2018. It would not have made any sense to sign annual agreements two weeks apart."

(Bohrer Decl. ¶ 3.) The Court disregards this testimony as a statement of Bohrer's unilateral, unexpressed belief as well, but the logic is sound. It is implausible that the parties would have signed an agreement in the two weeks before year end unless they intended it to reach forward into the new year.

Given the execution of the agreement in mid-December, a reasonable period of duration consistent with the intent of the parties would be the end of calendar year 2018.[1]

IV. Triborough Would Not Have Permitted RHG to Work on the Project Without an Indemnity and Insurance Agreement.

Both Bohrer of Triborough and Menashe of RHG testified that Triborough would not have allowed RHG to perform any work without an indemnification and insurance agreement in place. (Bohrer Decl. ¶¶ 7, 10; Tr. at 169.) The Court described this as "a key point of agreement" and "credible." (October 2 Order ¶ 34.)

Endurance now argues that the Court's finding is erroneous because Bohrer testified that he has known Menashe for fifteen years and done business with him over that

[1] Even if the reasonable period were narrowed to the first anniversary of the signing of the agreement, the date of the underlying injury, October 3, 2018, would be comfortably within that period.

period (Tr. at 71; October 2 Order ¶ 35), and yet the Agreement executed in December 2017 was the first indemnity and insurance agreement between Triborough and RHG. (Hallem Decl. ¶ 5; October 2 Order ¶ 20.) Endurance interprets this to mean that Triborough had done business with RHG for many years without an indemnity and insurance agreement. But the perceived contradiction is illusory. First, there is nothing in the record that suggests that RHG was in existence during that fifteen-year period nor that Menashe worked for RHG over that period.[2] Moreover, there is nothing unusual in job changes or ownership changes in any line of business, including the New York construction industry and the smaller universe of scaffolding contractors. Bohrer and Menashe may have worked together for fifteen years while associated with other companies. The testimony of Bohrer and Menashe stands uncontradicted.

V. Endurance Misreads the Juarez Case.

Lastly, defendant Endurance argues that a recent decision of the Appellate Division, First Department, shows that the Agreement could not have governed the work on the Project because there is no writing so stating. Endurance overreads the holding in Juarez v. Avacon Mgmt. LLC, 252 A.D.3d 1079 (1st Dept. 2026). Juarez addressed a circumstance in which there was no "meeting of the minds as to the project's scope of work." Juarez, 252 A.D.3d at 1082. One witness thought the scope of work was "mostly general labor—cleanup of the job site, touch up paint, minor demolition such as removing a piece of sheetrock, or patching a hole . . . but that the scope of their work was 'never defined.' " Id. at 1080. "He further testified that there was no written contract because the scope of the work was not defined, and

[2] The Court need not reach plaintiffs' request that the Court take judicial notice of the records of the New York Secretary of State showing that RHG Manpower Inc., the entity signing the Agreement with Triborough, did not make its initial filing as a corporation until August 2, 2016. (ECF 90 at 4.)

the scope of the work would not be defined '[b]ecause the client did not know what they were going to be designing until the building started to get cleaned up and they could assess the damages to the building . . . .' " Id. at 1080-81. He finally noted "that he did not know what [the injured worker] was doing or attempting to do at the time of the accident and did not say whether the injury-producing work was within [the] scope of work." Id. at 1081. The Appellate Division concluded that "the vagueness in the oral agreement's scope of work is evidence that the rider did not manifest a clear and unmistakable intent to indemnify Avacon for particular liabilities." Id. at 1083 (citations omitted). The Court did not hold that a written agreement was required, but merely that there was none and the oral agreement was too vague to imply an intent to indemnify the project or conduct at issue.

In contrast, the parties to this action formally entered into a pre-trial stipulation as follows:

> Plaintiff Shangri-La owned the property located at 37-21 32nd Street, Long Island City, New York (the "Property"). Plaintiff Shangri-La retained NY Fast to act as a contractor for a construction project at the Property ("the Project"). By contract signed in May 2018, Triborough was retained to provide scaffolding services at the Project. Triborough, in turn, retained RHG to act as a scaffolding sub-subcontractor at the Project.
>
> On October 3, 2018, non-party William Ramon Paulino ("Paulino"), allegedly fell from a scaffold while working as an employee of RHG at the Project.

(ECF 77 at 4; Joint Pre-Trial Order of June 23, 2026 at II(ii).) Thus, it is established that Triborough retained RHG to act as a scaffolding subcontractor at the Project and that the plaintiff in the underlying action was an employee of RHG who claimed he fell from a scaffold while working at the Project.

For reasons detailed in paragraphs seventy-seven through eighty-one of the Findings of Fact, this Court found that the Agreement was intended to apply to all projects performed by RHG for Triborough during 2018, including the Project at which the alleged injury in the Underlying Action occurred:

> As detailed above, plaintiffs have proven by a preponderance of the evidence that the Triborough-RHG Agreement was intended to apply to all projects that RHG performed for Triborough from the date of execution until a further agreement was reached and therefore included the entirety of 2018.

(October 2 Order ¶ 82.) Juarez provides no basis to reconsider the October 2 Order.

CONCLUSION

The motion to reconsider is GRANTED to the limited extent that the "Conclusion" of the October 2 Order is modified to delete the words "and indemnify" in the first sentence and the entirety of the second sentence that required the submission of a proposed final judgment. The motion to reconsider is otherwise DENIED.

Defendants shall respond to plaintiffs' submissions (ECF 91) on the recoverable costs of defense arising from the Underlying Action by December 7, 2026. Plaintiffs may reply by December 22, 2026. The parties may accompany their submissions with letter briefs laying out the applicable law. The parties are encouraged to meet and confer to resolve the issue of costs of defense.

The Clerk shall terminate the motions at ECF 87.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 20, 2026